## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is hereby entered into by and between Kinshu Ray ("Ray") on the one hand, and C.R. Bard, Inc. (the "Company"), on the other hand, as of the date of the last signature set forth below (the "Effective Date".) Each of Ray and the Company are referred to herein individually as a "Party," and collectively, as the "Parties." As used herein, the phrases "this Agreement," "hereto," "hereunder," and phrases of like import shall mean this Agreement. All capitalized terms shall have the meanings ascribed to them in the Agreement.

WHEREAS, Ray was engaged by the Company as an independent contractor from August 2012 until September 2013; and

WHEREAS, on September 22, 2014, Ray filed a Complaint for Damages against the Company in the Superior Court of Newton County, state of Georgia, which Complaint was removed to the United States District Court for the Northern District of Georgia (the "Court") on October 28, 2014 captioned as *Kinshu Ray v. C.R. Bard, Inc.*, Case No. 1:14-cv-03451-WSD, alleging violations of the Fair Labor Standards Act of 1938 ("FLSA") (the "Litigation"); and

WHEREAS, the Company denies Ray's claims and allegations in the Litigation and denies liability to Ray; and

WHEREAS, the Parties desire to finally and forever resolve all disputed matters between them existing as of the date of this Agreement, whether or not raised in the Litigation; and

WHEREAS, the Parties have entered into this Agreement to bring about such resolution;

NOW, THEREFORE, the Parties, with the intent of totally ending and forever foreclosing all matters or potential matters in dispute between the Parties up to the time of this Agreement, thereby assuring peace between the Parties based on such matters, in return for the mutual promises and consideration contained herein, the sufficiency of which is expressly acknowledged, agree as follows:

1. **Settlement Payment to Ray.** Provided that Ray executes this Agreement, the Company shall pay Ray the amount of Five Thousand Seven Hundred Fifty-Five Dollars and fifty-five cents ($5,755.55) (the "Gross Settlement Payment") no later than fourteen (14) days after the Company's receipt of a executed copy of this Agreement. The Gross Settlement Payment shall be allocated as follows:

    (i) The gross sum of $3,455.55 made payable to "Kinshu Ray," which shall constitute the entire amount payable to Ray for her Released Claims, as that term is defined in Section 4, including payment for any alleged unpaid wages (including overtime compensation), back pay, liquidated damages, interest, and any similar forms of relief she may have sought in the Litigation. The Company shall record this amount on a Form 1099 issued by the Company to Ray at year-end.

(ii) The sum of $2,300.00 as payment for Ray's attorney's fees and litigation expenses, made payable to Ray's counsel "The Law Office of Benjamin B. Kandy LLC." The Company shall record this amount on a Form 1099 issued by the Company to Ray's counsel at year-end.

2. **Acknowledgments Regarding Settlement Payments.** Ray assumes full responsibility to all federal, state and local taxing authorities and agrees to pay all taxes due on the Gross Settlement Payment. The Gross Settlement Payment is the total and sole consideration to be paid by the Company to Ray and her counsel for this Agreement and includes all costs and attorney's fees. It is expressly understood that the Gross Settlement Payment is paid to and accepted by Ray in full settlement of all alleged damages arising out of the subject matter of this Agreement, whether known or unknown and whether or not ascertainable at the time of the execution of this Agreement. Ray also understands that her entitlement to and retention of the benefits mentioned herein are expressly conditioned upon Ray's fulfillment of the promises herein.

3. **General Releases.** In further consideration of the foregoing, Ray does hereby knowingly and voluntarily release and forever discharge, both jointly and severally, the Company, its corporate subsidiaries, parents and affiliates, and their current and former officers, directors, employees, shareholders, attorneys, servants, agents, representatives and insurers, together with their predecessors, successors and assigns (hereinafter collectively referred to as "Releasees"), from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever, in law or in equity (hereinafter collectively referred to as "Released Claims"), whether known or unknown, which Ray ever had, now has, or may or might in the future have against the Releasees, arising out of events or occurrences arising at or before the moment Ray signs this Agreement, including, but not limited to: (i) those claims which were or could have been asserted in the Litigation; (ii) those claims arising under the FLSA; (iii) those claims arising under Title VII of the Civil Rights Act of 1964; (iv) those claims arising under 42 U.S.C. § 1981; (v) those claims arising under the Civil Rights Act of 1991; (vi) those claims arising under the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008; (vii) those claims arising under the Rehabilitation Act of 1973; (viii) those claims arising under the Equal Pay Act of 1963; (ix) those claims arising under the Genetic Information Nondiscrimination Act of 2008; (x) those claims arising under the Family and Medical Leave Act of 1993 ("FMLA"); (xi) those claims arising under the National Labor Relations Act, as amended by the Labor-Management Relations Act ("NLRA"); (xii) those claims arising under the Employee Retirement Income Security Act of 1974; (xiii) those claims arising under the Worker Adjustment and Retraining Notification Act of 1988; (xiv) those claims arising under any other federal or state fair employment practices or wage and hour statute, or any ordinance promulgated by any county, municipality, or other state or federal subdivision; (xv) those claims for retaliatory or wrongful discharge of any kind; (xvi) those claims for intentional or negligent infliction of emotional distress or outrageous conduct; (xvii) those claims for breach of contract (express or implied, in fact or in law, oral or written), or any duty or implied covenant of good faith and fair dealing; (xviii) those claims for breach of fiduciary duty, fraud, misrepresentation, breach of right of privacy, libel, slander, defamation or tortious conduct of any kind; (xix) those claims for interference with business relationships, contractual relationships, or employment relationships of any kind; (xx) those claims arising from or in reliance upon any statute, regulation, rule or ordinance (local, state or federal); (xxi)

any and all other claims arising under law or in equity; and (xxii) any and all other claims which Ray ever had, now has, or may or might in the future have arising by reason of or in any way connected with any relationship which may have existed prior to or on the date hereof between Ray and the Company, the termination of that relationship, or the decision to terminate that relationship; provided, however, that this Agreement does not waive rights or claims that may arise after the date the Agreement is executed.

    a. Without limiting the generality of the foregoing, Ray hereby acknowledges that she is not aware of any facts that would state claims by her against the Releasees arising under the FMLA or NLRA.

    b. Ray warrants that she has not filed or assigned or transferred to any other person any claim released in this Section. In the event of such filing, assignment, or transfer, Ray agrees to indemnify and hold harmless the Releasees from and against any liability, loss, cost (including attorney's fees), expense, settlement, or judgment arising out of such filing, assignment, or transfer.

    c. Ray further acknowledges and covenants that, in consideration for the agreements and commitments set forth herein, she has knowingly relinquished, waived and forever released any and all damages and remedies which might otherwise be available to her, including, without limitation, claims for contract or tort damages of any type, claims for legal or equitable relief under either federal or state statutory and common law, claims for backpay or front pay, compensatory damages, punitive damages, liquidated damages, expense reimbursement, reinstatement and recovery of attorney's fees.

4. **Covenants Not to Sue.** Ray further acknowledges and covenants not to sue the Releasees, or to participate or aid in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon, or otherwise enforce or accept any judgment, decision, award, warrant or attachment upon any claim released by her herein. Ray also acknowledges and covenants that she understands that after signing this Agreement, she cannot proceed against any Releasee with respect to or on account of any of the matters referred to in it; provided, however, that this Agreement does not prohibit Ray from filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or any other federal, local or state agency, although Ray agrees and acknowledges that she has waived, and shall not collect, any monetary benefits if the EEOC or other federal, state or local agency pursues a suit on her behalf against the Releasees.

A "covenant" not to sue is a legal term that means a party promises not to file a lawsuit against another in court. It is different from the General Release of claims contained in Section 4 of this Agreement. In exchange for the consideration described in Sections 1 and 2 and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Ray further agrees never to sue any of the Releasees for any of the Released Claims. Ray also agrees that she will not join or consent to opt into any certified or conditionally-certified class or collective action, or any other multi-party litigation, against any Releasee involving any of the Released Claims. Likewise,

Ray agrees that she will opt-out or otherwise withdraw from any such litigation to which she becomes a member or participant.

If Ray violates this covenant by suing any of the Releasees for any Released Claims, Ray shall be liable to such Releasee as are party to such lawsuit for their reasonable attorney's fees and other litigation costs incurred in defending against such lawsuit.

Nothing in this Section 5 shall apply to prohibit Ray from suing to enforce the terms of this Agreement. Nothing in this Section 5 precludes or restricts the Company from seeking any and all damages, injunctive relief, or other remedies against Ray for violation of any section of this Agreement. Ray acknowledges and agrees that the covenant not to sue in this Section 5 is an essential and material term of this Agreement without which the Parties could not have reached a settlement. Ray affirms that she understands and acknowledges the significance and consequence of this Section 5.

5.  **Stipulation of Dismissal.** Within five (5) days after the Effective Date, the Parties shall cause to be completed, executed and filed in the Litigation a Joint Stipulation of Dismissal with Prejudice, consistent with this Agreement and in the form attached hereto as Exhibit A.

6.  **Waiver of Employment.** Ray covenants that she will never knowingly apply for or accept an independent contractor engagement or employment with the Company, or its corporate subsidiaries, parents, or affiliates. Ray acknowledges and agrees that in the event that she applies for an independent contractor engagement or employment with any of these entities, such application shall constitute a breach of this Agreement, and such breach shall be a legitimate, non-discriminatory and non-retaliatory reason for any refusal to engage or hire her. Ray further acknowledges and agrees that in the event that she is mistakenly engaged or hired by any of these entities, such acceptance of employment shall constitute a breach of this Agreement, and such breach shall be a legitimate, non-discriminatory and non-retaliatory reason for her termination, without cause, without notice, and without recourse available to her against these entities. Ray further agrees that she will not assert, file or prosecute any charge or claim against the Company or its corporate subsidiaries, parents, or affiliates based on this Section.

7.  **Denial of Wrongdoing.** It is further understood and agreed that the payment and benefits conferred herein are not to be construed as an admission of liability on the part of the persons, corporations and entities hereby released, by whom liability is expressly denied.

8.  **Non-Admission.** This Agreement is entered into solely in order to compromise and settle disputed claims, without any acquiescence, acknowledgement, or agreement by any Party as to the merit of any actions, causes of action, suits, debts, dues, sums of money, accounts, damages, expenses, attorney's fees, costs, punitive damages, penalties, judgments, claims or demands released herein. Neither this Agreement nor any part thereof shall be, or be used as, evidence or an admission of liability by anyone, at any time, for any purpose.

9.  **Basis for Settlement.** Each Party acknowledges and agrees that the terms of this Agreement are, and have been agreed to, for their mutual convenience, in part to avoid the expense, distraction, risk and uncertainty of further litigation, and after considering the risks of litigation and the circumstances of their respective businesses. Each Party also acknowledges and agrees that it

has relied entirely on its own judgment, belief and knowledge (including its judgment, belief and knowledge with respect to the foregoing, the extent and duration of the claimed damages in the Litigation, and the value of settling the Litigation at this time) and the advice and recommendations of her or its own independently selected counsel, and, accordingly, neither it nor anyone acting on its behalf shall (or shall have the right to) deny or challenge the validity of this Agreement or any of the obligations of the Parties hereunder.

10. **Confidentiality.** Ray agrees that she will not discuss, reveal, or comment upon the fact of settlement, the settlement terms, this Agreement or the Gross Settlement Payment, with any person except (a) her spouse; (b) her counsel, accountant(s), and/or tax preparer(s); (c) as may be required by law; or (d) as necessary to enforce the terms of this Agreement. Ray further agrees that she will inform anyone to whom the terms of this Agreement are disclosed of the confidentiality requirements contained herein. Ray agrees that if she is asked about the resolution of any disputes between herself and the Company, she shall state only that "the matter has been dismissed."

11. **Construction.** This Agreement has been negotiated by the Parties and shall be interpreted fairly in accordance with its terms and without any construction in favor of or against any of the Parties. The interpretation and construction of this Agreement shall be subject to the following provisions: (a) words importing the singular meaning include where the context so admits the plural meaning and vice versa; (b) the terms "and" and "or" as used herein shall mean both the conjunctive and the disjunctive, so that one word or the other may be taken accordingly as the one or the other (i.e., "and/or"); (c) the word "any" shall mean "all" or "one out of several"; (d) references to any person shall include natural persons and partnerships, firms and other incorporated bodies and all other legal persons of whatever kind and however constituted; (e) the words "include," "includes" and "including" are to be construed as if they were immediately followed by the words "without limitation"; and (f) captions and headings used herein are inserted for convenience only and are in no way intended to describe, interpret, define or limit the scope, extent or intent of this Agreement.

12. **Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the Parties and their heirs, executors, administrators, conservators, assigns, successors, beneficiaries, employees and agents, and all other persons asserting claims by, on behalf of, or through them based or founded upon any of the claims released herein.

13. **Waiver.** Failure by any Party to insist upon strict performance of any provision herein by any other Party shall not be deemed a waiver by such Party of its rights or remedies or a waiver by it of any subsequent default by such other Party, and no waiver shall be effective unless it is in writing and duly executed by the Party entitled to enforce the provision being waived.

14. **Severability.** In the event that any term, covenant, condition, agreement, section or provision hereof shall be deemed invalid or unenforceable, this Agreement shall not terminate or be deemed void or voidable, but shall continue in full force and effect and there shall be substituted for such stricken provision a like but legal and enforceable provision which most nearly accomplishes the intention of the Parties hereto.

15. **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties regarding the subject matter set forth herein, and all prior statements, negotiations, representations or warranties are expressly merged herein. Except as set forth in this Agreement, no Party has relied upon the representations of the other Party to induce them to enter into this Agreement. It is expressly understood and agreed that this Agreement may not be altered, amended, waived, modified or otherwise changed in any respect or particular whatsoever except by writing duly executed by authorized representatives of the Parties.

16. **Choice of Law and Forum Selection.** This Agreement will be interpreted under and is governed by the laws of the State of Georgia without regard to conflicts of laws principles. The Parties (a) hereby irrevocably submit themselves to and consent to the exclusive jurisdiction of the Court (or, if the Court lacks jurisdiction, the state courts for Newton County, Georgia) for the purposes of any action, claim, suit or proceeding arising from or relating to this Agreement, and (b) hereby waive, and agree not to assert, by way of motion, as a defense or otherwise, in any such action, claim, suit or proceeding, any argument that she or it is not personally subject to the jurisdiction of such court(s), that the action, claim, suit or proceeding is brought in an inconvenient forum, or that the venue of the action, claim, suit or proceeding is improper.

17. **Counterparts.** This Agreement may be executed in separate counterparts, each of which shall constitute an original. Facsimile or electronic signatures shall be treated as originals.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

The undersigned acknowledges that she has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this _____ day of November, 2014.

KINSHU RAY

_____
Signature

11/25/2014
_____
Date



The undersigned acknowledges that its authorized signatory has read and understands the foregoing Settlement Agreement and General Release, and that the undersigned agrees to the same and voluntarily executes the same this _____ day of November, 2014.

C.R. BARD, INC.

_____
Signature

BETTY LARSON
Print Name

VICE PRESIDENT HUMAN RESOURCE
Title

DEC. 1, 2014
Date